UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CRIMINAL ACTION NO. 2:13-CR-51-DLB-CJS        *ELECTRONICALLY FILED*

UNITED STATES OF AMERICA                                                                 PLAINTIFF

V.        JOINT MOTION TO WAIVE PRESENTENCE INVESTIGATION AND REPORT PURSUANT TO FED. R. CRIM. P. 32(c)(1)(A)(ii) AND U.S.S.G. §6A1.1(a)(2)

SHINGO OKUDA                                                                                DEFENDANT

The United States of America, by and through its counsel, and the Defendant, Shingo Okuda, by his undersigned attorneys, respectfully submit this Joint Motion to Waive Presentence Investigation and Report Pursuant to Fed. R. Crim. P. 32(c)(1)(A)(ii) and U.S.S.G. § 6A1.1(a)(2). For the reasons set forth below, the United States and the Defendant respectfully request that the Court accept the Defendant's guilty plea pursuant to Fed. R. Crim. P. 11(c)(1)(C); consolidate the entry of the guilty plea and the sentencing into one proceeding; waive the presentence investigation and report; and sentence the Defendant in accordance with the terms of the plea agreement.

The parties submit that the information contained herein and the information to be proffered by the parties at sentencing satisfy the requirements of Rule 32(c)(1)(A)(ii) and are sufficient to enable the Court to exercise its sentencing authority meaningfully under 18 U.S.C. § 3553(a) without the necessity of a presentence investigation and report. *See United States v. Brown*, 557 F.3d 297, 300 (6th Cir. 2009) ("Presentence reports, while often an important resource, are not a mandatory part of the sentencing process. Both the Federal Rules of Criminal

Procedure and the Sentencing Guidelines expressly provide that a district judge may sentence a defendant without a presentence report '[if] the court finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553, and the court explains its finding on the record.' Fed. R. Crim. Pro. 32(c)(1)(A)(ii); U.S.S.G. § 6A1.1(a)(2). This makes sense.") (brackets in original).

I.      BACKGROUND OF THE OFFENSE

The Plea Agreement executed by the Defendant and the Department on April 18, 2014 pursuant to Rule 11(c)(1)(C) describes the Defendant's conduct:

> (a) For purposes of this Plea agreement, the "relevant period" is that period from at least as early as January 2003 until at least February 2010. During the relevant period, the defendant was employed by G.S. Electech, Inc. ("GSE"), a corporation organized and existing under the laws of Japan, and with its principal place of business in Toyota City, Japan. During the relevant period, the defendant was employed by GSE as Engineering and Sales Division Manager from at least as early as January 2003 until at least December 2008 and as Engineering Division Manager from January 2009 until at least February 2010. During the relevant period, GSE was an assembler of speed sensor wire assemblies and was engaged in the sale of speed sensor wire assemblies to Toyota Motor Corporation and Toyota Motor Engineering & Manufacturing North America, Inc. (collectively, "Toyota") in the United States and elsewhere. Speed sensor wire assemblies are installed on automobiles with an Antilock Brake System ("ABS"). An ABS is a safety system installed on vehicles to maintain traction with the road surface while braking and to prevent the wheels of a vehicle from locking when the brakes are applied forcefully, thereby avoiding uncontrolled skidding. An ABS includes a central electronic control unit and separate speed sensors installed on each wheel, and the electronic control unit monitors the speed of each wheel to determine if any wheel is rotating significantly faster or slower than the rest. The speed sensor wire assemblies connect the sensors on each tire to the ABS and carry electrical signals from the sensors to the ABS to instruct it when to engage. During the relevant period, GSE's sales of speed sensor wire assemblies affecting Toyota in the United States and elsewhere totaled approximately $11 million.
>
> (b) During the relevant period, the defendant participated in a conspiracy with another entity, and persons employed by that entity, engaged in the manufacture and sale of speed sensor wire assemblies, the primary purpose of which was to rig bids for, and to fix, stabilize, and maintain the prices of,

      speed sensor wire assemblies sold to Toyota in the United States and elsewhere. In furtherance of the conspiracy, the defendant engaged in discussions and attended meetings with co-conspirators involved in the manufacture and sale of speed sensor wire assemblies. During such meetings and conversations, agreements were reached to allocate the supply of speed sensor wire assemblies sold to Toyota on a model-by-model basis, rig bids quoted to Toyota for speed sensor wire assemblies, and to fix, stabilize, and maintain the prices of speed sensor wire assemblies sold to Toyota in the United States and elsewhere.

(c) During the relevant period, speed sensor wire assemblies sold by one or both of the conspirator firms, and equipment and supplies necessary to the production and distribution of speed sensor wire assemblies, as well as payments for speed sensor wire assemblies, traveled in interstate and foreign commerce. The business activities of GSE and its co-conspirators in connection with the production and sale of speed sensor wire assemblies that were the subjects of this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

(d) Acts in furtherance of this conspiracy were carried out within the Eastern District of Kentucky. Speed sensor wire assemblies that were the subject of this conspiracy were sold by the conspirators to Toyota in Erlanger, Kentucky.

Plea Agreement, dated April 18, 2014, § 4(a-d).

## II.   SENTENCING GUIDELINES

      In the plea agreement, the parties agreed on the appropriate application of the Sentencing Guidelines:

- The controlling Guideline applicable to the sole count charged is U.S.S.G. §2R1.1, pursuant to which the base offense level is 12;

- The offense to which Defendant is pleading guilty involved participation in an agreement to submit non-competitive bids, within the meaning of U.S.S.G. §2R1.1(b)(1), which increases the offense level by 1; and

- The volume of affected commerce within the meaning of U.S.S.G. §2R1.1(b)(2) is more than $10 million, which increases the offense level by 4.[1]

---

[1] Unlike fraud offenses which measure actual or intended loss or gain by a defendant, antitrust offenses utilize the volume of commerce affected by the conspiracy. Section 2R1.1 of the Sentencing Guidelines explains that the purpose of the volume of commerce analysis is "to avoid the time and expense that would be required for the court to determine the actual gain or loss" as "the average gain from price-fixing is 10 percent of the selling price" but the "loss from price-fixing exceeds the gain because, among other things, injury is inflicted upon consumers who are unable or for other reasons do not buy the product at the higher prices." U.S.S.G. §2R1.1, comment n. 3. Section

The United States agrees that Defendant has timely accepted responsibility and should receive the full credit of a three-level reduction, pursuant to U.S.S.G. §3E1.1(b). Thus, Defendant's Total Offense Level is 14. Defendant has no criminal history. Accordingly, based on a Total Offense Level of 14 and a Criminal History Category I, the Guidelines range for Defendant is 15 to 21 months. However, the parties agree that Defendant should receive a slight reduction in his sentence in recognition of his cooperation in the Government's investigation, resulting in the agreed-upon sentence recommendation of 13 months imprisonment.

### III.     SECTION 3553(a) FACTORS SUPPORT THE RECOMMENDED SENTENCE

Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines are advisory and not binding on this Court's sentencing decision. While "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," the Guidelines are merely the "starting point and the initial benchmark . . ." *Gall v. United States*, 552 U.S. 38, 49 (2007). Rather, the Court must "consider all of the § 3553(a) factors" and "must make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 49-50.  After the decisions of the Supreme Court in *Gall* and *Kimbrough v. United States*, 552 U.S. 85 (2007), a sentencing court must consider the factors set forth in 18 U.S.C. § 3553(a) and impose a sentence "sufficient, but not greater than necessary" to comport with the goals of criminal justice. *United States v. Denny*, 653 F.3d 415, 420 (6th Cir. 2011).

---

2R1.1 explains that the volume of commerce attributable to an individual participant in a conspiracy is "the volume of commerce done by him or his principal in goods or serves that were affected by the violation." U.S.S.G. §2R1.1(b)(2). The entire volume of sales during the charging period is attributable to Defendant.

A.  Nature and Circumstances of the Offense

The Defendant's conduct and the nature and circumstances of the offense are described above in section I (pp. 2-3).

B.  History and Characteristics of the Defendant

Mr. Okuda is a fifty-four year old Japanese citizen with no criminal history. He is married and has two teenage daughters, ages 15 and 17. He graduated from Kanazawa Technical College in 1980 with a degree in electrical engineering and began his employment at GSE in 1990 where he remains today. He was the Engineering and Sales Division Manager from January 2003 until December 2008 and Engineering Division Manager from January 2009 until approximately February 2010; his current position is Technical Advisor. He suffers from hyperlipidemia and hypertension, which are controlled through daily medication.

C.  Need for Adequate Deterrence and to Avoid Unwarranted Sentence Disparities among Defendants Similarly Situated

The recommended sentence of 13 months in prison is a significant punishment and serves the public's interest in specific and general deterrence. The United States' investigation into bid rigging and price fixing in the automotive parts industry is widespread. Thus far, twenty-seven (27) different parts suppliers have pleaded guilty and more than $2.3 billion in criminal fines have been imposed by courts in Michigan, Indiana, and Ohio. In addition, thirty-five (35) individuals have been charged in the investigation for their participation in the conduct, and twenty-two (22) of those individuals have received sentences ranging from a year and a day to twenty-four (24) months imprisonment.

The decision of where a particular individual falls within that range is based on a number of factors, including (1) the volume of commerce affected; (2) the individual's relative culpability within the company and the individual conspiracy; (3) the individual's culpability

compared to others within the broader investigation; and (4) the individual's cooperation in the investigation, if any. The United States has spent considerable effort to ensure that similarly situated individuals receive similar terms of imprisonment and has determined that a sentence of thirteen months imprisonment is appropriate here.

Compared to other individuals in the broader investigation, Defendant's conduct affected the lowest volume of commerce. Other defendants affected tens or hundreds of millions of dollars of commerce because the part or parts for which they rigged bids cost significantly more than the speed sensor wire assemblies whose sales price were affected by Defendant. Speed sensor wire assemblies cost between approximately two dollars and fifty cents to five dollars per unit. Despite the low volume of commerce, Defendant was integral to the formation and success of the conspiracy.

The United States believes that, given these countervailing factors, Defendant should be at the bottom of the applicable Guideline range of 15-21 months. Moreover, Defendant deserves a minor reduction from the Guidelines range based on his cooperation. In addition, his acceptance of responsibility for his actions and his agreement to voluntarily submit to U.S. jurisdiction to spare the time and expense of extraditing him to stand trial were significant factors in the Department's decision to agree, pursuant to Rule 11(c)(1)(C), that a 13-month prison sentence, followed by no term of supervised release, and no order of restitution is an appropriate sentence in this case.

## IV.     CONCLUSION

For all of these reasons, we recommend jointly that the Court impose a sentence requiring a period of imprisonment of 13 months, a criminal fine of $20,000, no period of supervised release, and no order of restitution.

                                                                Respectfully Submitted,

| | |
|---|---|
| /s Lawrence Wechsler | /s Shane Cralle |
| Lawrence H. Wechsler | Shane Cralle |
| Ariel S. Glasner | Carsten Reichel |
| Blank Rome LLP | U.S. Department of Justice |
| Watergate | Washington Criminal I Section |
| 600 New Hampshire Ave NW | Antitrust Division |
| Washington, DC 20037 | 450 5th Street NW, Suite 11300 |
| Tel: (202) 772-5824 | Washington, DC 20530 |
| Fax: (202) 572-8390 | Tel: (202) 532-4398 |
| lwechsler@blankrome.com | Fax: (202) 514-6525 |
| | shane.cralle@usdoj.gov |

Dated: June 6, 2014

7

## **CERTIFICATE OF SERVICE**

On June 6, 2014, I electronically filed this document through the ECF system which electronically notifies Counsel for the Defendant.

/s Shane Cralle
Trial Attorney
United States Department of Justice
Washington Criminal I Section
Antitrust Division
450 5th St. NW, Suite 11300
Washington, DC 20530-0001
Tel: (202) 532-4398
Fax: (202) 514-6525
shane.cralle@usdoj.gov
